It's cold in here, you must be pregnant. I didn't say anything. Good morning. First case is 051330, Dippin' Dots v. Mosey. Mr. Warren. Good morning. My name is Dan Warren. I'm the son of Asbel and Brethren. I represent Dippin' Dots and Mr. Kirk Jones. We have raised several issues on appeal this morning. We'll start with the low offenses, so to speak, to no overview of the plaintiff's structure. The court made a number of positive claim constructions that, for the most part, are okay. They meet the ordinary meeting requirements of Phillips. The court also made a number of negative constructions that are in error as a matter of law. They're in error because he construed the term comprising as not being an open-ended term. When you use comprising, there's a presumption that the claim is open-ended, unless the file history and specification limit the claim somehow. For example, in this case, the court construed the term beads to mean smooth and spherical. That's fine. The court then excluded irregular or odd-shaped particles such as popcorn. The special master flatly stated, quote, The specification and prosecution history of the 156 patent do not indicate that the patentee used the term beads differently than its ordinary meaning. The specification is purely silent on popcorn or irregularly shaped particles. Nonetheless, the court construed the term by what it's not, and that's simply inconsistently using the term. But didn't the whole invention turn around on the point that these frozen beads have to remain free-flowing, and to the extent that you start introducing non-bead-like shapes, it's not going to flow very freely, is it? It won't flow as well. Freely is what the language is. That's right. You don't have round beads. If you have chunks, do these things flow freely? The beads will. Well, but it's the invention that has to flow freely, the whole thing. Correct. But it's the beads that make the free-flowing. If there are beads in the mix, the beads will flow. And if there's two beads and the predominant is chunks, the invention is not going to flow, is it, very well? Well, that's the question of fact. Well, but isn't that what the district court was focusing on? And in that sense, didn't the district court maybe grasp the invention correctly? I think by including a negative notation, it oversteps its proper role in describing what the term beads means. Well, we all understand the distinction between comprising and consisting, but the overall task of that judge is to discern the meaning of the invention as expressed in the claim language. And so I'm struggling still to understand why his construction doesn't preserve the free-flowing nature of the invention. Well, let's get to free-flowing. There's beads to begin with. The next step is dripping. He got dripping right. It means letting them fall into dots. But then he came back and said, in ignoring comprising, that dripping doesn't mean dripping and streaming. He went the next step. Same way with maintaining the beads for free-flowing for an extended period of time. Streaming would result in? Arguably, it results in the clumps. So once again, it comes back to the point of whether he's preserving the free-flowing nature of the invention in his construction. Yes, sir. Yes, sir. Now, in maintaining the beads, he defined it as capable of being poured into a cup. No problem with that at all. But then he went on and said all beads must be free-flowing at all times. One, that rules out the claim limitation of an extended period of time. Two, it's not required for specification. Three, it's a physical impossibility. Defendant's expert testified that you will never get all the beads to be free-flowing all the time. That is a completely infringement-proof claim amendment. The third one is elementary composition. The court construed it as dairy-based, which is fine. But then the court entered the final construction was elementary composition means it will accomplish the purposes of the claimed invention and achieve the results specified in Claim 1. I have no idea what that means. So we ask you to adopt the positive construction. The negative constructions aren't needed to avoid the prior art, not supported by the spec. There's certainly no clear disclaimer in the file history. Instead, it's just a result-oriented construction. Once the proper construction is entered, the summary judgment on infringement needs to be reversed. Sticking with the low offenses, moving on to obviousness. If it is physically impossible to infringe the free-flowing element as construed, one would think that it would be impossible to invalidate that element. The court has routinely held that claims must be construed consistently for invalidity and infringement. That simply didn't happen here. The court construed the claim to mean free-flowing all the time. Defendants conceded that can't happen. But the jury nonetheless found the limitation to be met. What happens if you fix the claim construction, if you get rid of the negative elements? Well, one, we no longer have any valid claims as facts. We're essentially speculating at this point. But let's look at Claim 1. It has six steps. Preparing, dripping, freezing, storing, bringing, or rewarding. And certainly, the examiner found the combination of those six steps to be obvious under Section 103. In other words, each of the steps is in the prior art. The claim was allowed over a declaration of commercial success. Defendants expert agree that the patent examiner was correct in allowing the claims in line with the prior art and the declaration. Now, defendants argue that what we're calling festival market sales somehow is a missing link to invalidity. We'll discuss it more in context of inequity of conduct. But more than one year before the file date, Mr. Jones sold ice cream from dripping and streaming the composition, freezing it to 50 degrees below zero, scooping it, and telling the customers to eat it only after it stopped smoking. At best, you've got the preparing, dripping, and freezing steps if you look at claims in a vacuum. If you look at claims that's construed, at best you have the freezing step. Now, defendants won't agree with that construction, but nonetheless, there's no issue that this is not a 102 on sale bar. All claim limitations are not met by festival market sales. Which ones are not met? The storing, the bringing, and the serving. At a certain temperature? Yes, sir. Weren't they stored and brought to a certain temperature before they were sold? There was no storing whatsoever at festival market. They would freeze it, and then they would distribute it to customers. But there must have been some storing. It wasn't done on order, was it? Well, they had dry ice, but the specific... So it was stored? Well, yes, temporarily, literally from the vat, the dry ice, and sold. That was the problem with it. You couldn't make enough to sell it, wait for it to come to the right temperature, and then, of course, you're scared of customers because it's smoking. Well, what about the serving limitation and the claim? The servings, the beans' consumption at minus 10 degrees, minus 20 degrees? Yes, sir. When does the ice cream stop smoking? At what temperature? At 50 degrees it smokes, my understanding is at 10 to 20 degrees below zero it does not. So it stops smoking at minus 10 to 20? I think somewhere between 50 and 20 it will stop. So what does that mean as far as limitation is concerned? Is meeting the limitation on the sale bar because there was no specific temperature that did not meet the limitation on the sale bar? The storing temperature wasn't met, the serving temperature wasn't met. So the specificity of the temperature is what distinguishes it, in your judgment? Yes, sir. I still have problems with the 102 sale at the festival market. I guess the jury did find that there were sales, there was a prior sale on that? There was definitely prior sales. No one has ever raised the fact that those were 102 sales. This is simply a 103 issue. And if I can move on to an act of conduct, that's the biggest problem with an act of conduct. The patent examiner recognized that all six elements are in the prior art. The examiner allowed the claims because of the secondary grant factors. But if all six elements are in the prior art, then anything else by definition has to be cumulative. In other words, both the board and the examiner found all six steps to be obvious. This isn't 102. If it's obvious, all steps are there. Now, in its—under an act of conduct, when you're trying to balance materiality and intent, the first step, either under your digital case, be it Rule 56, be it your old examiner standard, the first thing you look at is whether or not the material was in front of the examiner. In this case, by definition, everything was. He found each of the steps to be obvious over the reference. What this case really turns on is what the patent attorney told the PTO and what Mr. Jones, in his commercial success declaration, told the PTO. There's some sort of a stop-all argument. Now, with the patent examiner, the claim originally had the first five steps. The board maintained the 103 rejection with one of the reasons being appellant's claim failed to cite a positive step of serving the product at a temperature in which the beads are free-flowing. The patent attorney turned around and said, fine, we will enter that positive step. And his exact language is important. Claim 1 now positively recites the steps of serving the beads for consumption at a temperature between substantially negative 10 and 12. Do you want to save it? I need to finish this point. Well, finish the point, but don't read it. We can read it ourselves. But then he cited to the board. In light of the comments of the board, his comments were completely accurate. It's what the board said. Now, I'm troubled by the Supreme Court opinion where he talks about what Mr. Shickley said and leaves out the part where he's quoting the board. Mr. Shickley was citing to the board for support that the range was not obvious. It is just unfathomable that an equitable comment can be based on citing something to the board. This is not the case of an examiner being tricked. The examiner turned around and rejected the claim anyway. I mean, there's relies. There's the but-for. The examiner didn't care if the serving temperature range was a prior art or not. He considered it to be obvious. The second one, and I'll sit down, is Mr. Jones' declaration itself. The first method to allow serving a flow-freeing elementary product for direct consumption by consumers, that's exactly correct. You could not go to the festival market from the vat and consume. If it would be 50 degrees below zero, it would burn you. Once you got the storing, the warming, and the serving step, this product took off. It would have been a better declaration of commercial success. Mr. Jones had said, before we figured out storage, warming, and serving, the product failed. We couldn't have enough product on hand, and it smoked. Once these steps were added, the product took off like a rocket. This is where the commercial success lies. The disclosure at the festival market would have made a stronger case, not less. It certainly doesn't ruin patentability. Thank you. Mr. Broyles, you have all divided this up three ways, huh? Yes, Your Honor. All right. I'll try to stay within the time you've asked for. Hello, Your Honor. My name is Keith Broyles. I represent Cross-Device Distribution. I'm going to take the first six minutes and address the antitrust issues of market definition and antitrust injury. With respect to both of those issues, Dippin' Dots cannot challenge those two findings by the jury on insufficiency of the evidence grounds because it failed to move under Rule 50A for judgment as a matter of law. The Supreme Court's decision in Unitherm is directly on point and controls with respect to these issues. How can the market not consider ice cream products as substitutes? Well, because the evidence before the jury was that this is essentially a sub-market of the ice cream. You're saying that every single person who couldn't have bought a free-flowing bead product would have left the marketplace, not interested in ice cream anymore? What I'm saying, Your Honor, is that this is a sub-market. The evidence in front of the jury was that— Sub-market. It's a sub-market. Sub-markets have any relevance to the larger market in which they appear then? Well, for antitrust purposes, under Brown's Shoe, they are considered essentially a separate market. The evidence was that Dippin' Dots was able to charge prices 25 to 40 percent higher than other ice cream products, and that did not impact their sales. There was also evidence that it could— You're saying demand curves don't slope downwards? I mean, you're saying that there would have been no other substitute product at price variation? That is correct, Your Honor. In fact, the evidence was that they could go into malls and amusement parks and not impact at all other ice cream sales. Magnificent. You may have made economic history. I'm not sure they found any non-price-elastic products of any kind. Well, what I'm saying is that was the evidence in front of the jury. That is the evidence the jury used to define this market this way. Are we to take cognizance of a record that doesn't reflect economic realities? Well, I think it does reflect economic realities. There was evidence in the record that the jury used to make this market definition finding. Now, Dippin' Dots also says that there was no expert evidence in the record, and that forecloses the market definition. Dippin' Dots, for the first time, raised that in its reply brief. In fact, there was expert evidence in this record on market definition. But Unitherm controls here. It essentially harmonized the circuits to follow the same rule that this Court has always followed, namely, a party's failure to file a Rule 50A motion forecloses its ability to argue insufficiency of evidence on appeal. Well, they did file a 50A motion. Well, they filed a—correct, Your Honor. That's absolutely correct. They filed a 50A motion on the grounds of infallibility and unenforceability, not on any antitrust issues. That is absolutely correct. Now— But their Rule 50B only goes to the antitrust issues— That's correct, Your Honor. —and not to the patent issues. That's correct. But the Fifth Circuit made clear in the Flint Co. case, which is in our papers, that a failure—it's a two-step process. 50A is the first step, and 50B is the second step. The failure to file under 50A, a party waives its right to file under 50B, and that's what the district court judge recognized in denying the motion for reconsideration. Now, the next point that I want to go to briefly is— Let me ask you something. With respect to the damages, the jury came back with zero damages. Yes, Your Honor. But the judge still assessed legal fees under the Clayton Act. Is that proper under the— It's absolutely proper, Your Honor, because if you look at the jury verdict form, jury interrogatory number 12 on the one hand and interrogatory number 13 and 14 on the other recognizes the two tests under the antitrust laws. First of all, interrogatory number 12 essentially asked the jury whether there was a fact of damage. The jury said yes. Thirteen and fourteen asked the jury whether there were any actual damages, in other words, compensatory damages. You need to prove up compensatory damages for the travel damages finding under the Clayton Act. The jury apparently believed that there was a failure of proof on that particular issue. Now, here in some cases they say, well, a nominal damages finding will support a Clayton Act fee award, but all that is required for a Clayton Act fee award is to show the fact of damage. We showed that. The jury found that in interrogatory number 12. But they found no damages, no monetary damages, not even $1. That's correct. But they didn't need to find $1 because they were specifically asked whether there was a fact of damage in interrogatory number 12, so we didn't need a nominal damages award. The jury verdict form is absolutely consistent on this point. It recognizes the two tests, and the test is under the Clayton Act to recover fees whether the party showed the fact of damage. And it's simple. The requirement for this is – They didn't. The damages were zero. Well, the policy behind this is simple. If you look at the policy in the Clayton Act, it is to encourage private litigants to enforce the antitrust laws. And that's why there is a different standard for awarding attorney's fees. All you have to show is the fact of damage. The jury found the fact of damage. They found a failure of proof. How do you have a fact of damage when damage is zero? Well, for one thing, filing a lawsuit based on a fraudulently obtained patent leads to antitrust injury. That's well established in the jurisprudence. That is the fact of damage. The fact that my client had to spend its business resources defending against this is a fact of damage. The jury found that in special interrogatory number 12. Dippin' dots. And, in fact, if it's going to challenge that, it should have filed a motion for a new trial. It didn't do that either. So its argument should be rejected on that point. All right. Thank you. Thank you. Mr. Pope, are you next? Yes, sir. Thank you. Good morning, Your Honors. May it please the Court. My name is Robert Oak, and together with Mr. Rudolph Sigismund, we represent Frosty Bites Incorporated, now known as Mini-Melts, Mr. Tom Mosey, and Mr. Nick Angus. I will have seven minutes to address four issues. The fraud charge, inequitable conduct, patent invalidity, and, briefly, the cross point. First, with regard to the fraud charge, Dippin' Dots argues that the district court's finding on fraud, walker process fraud, cannot stand because it's only based on the jury's answers on inequitable conduct, which involved a lower standard, and also the finding is clearly erroneous. Where's the proof of intent for inequitable conduct, which has to be there to support the walker process fraud and perhaps is the weakest link in your chain? There are two strong and clear and convincing points on intent. First of all, Curt Jones filed a declaration of commercial success, and in that declaration, he swore, under Oak, that his method, claim method, with initial sales in March of 1988, was the first method to serve free-flowing frozen beads for direct consumption. And why isn't he entirely correct, or arguably correct, at least to the point to negate any intent, because the festival event didn't store at the temperature, bring it to the temperature, or serve it at the temperature that he claimed, making it not the claimed invention, making it not an intentional failure to disclose the claimed invention. The entire prosecution process... No. Yes. Yes, okay, please, show it to me. Okay, well, first of all, it was stored, it had to be stored, because it was manufactured... At the temperatures, it's not just storing, it has to be stored at a temperature as low as minus 20 degrees Fahrenheit, so as to maintain beads from free-flowing for an extended period of time. Correct. All of those things, every single syllable of that has to be met by festival, was it? And where does the record show it was? Well, to prove a case of anticipation, it would have to be, but this is an obviousness case, we're dealing with 103... That's just fine, and we're dealing with intent, so that if he feels like that's not my invention, he's not intentionally failing to disclose it. That's what you and I are talking about. You said, oh, this is the strongest thing in the world. I'm just saying, it seems to me like he has a pretty good reason to say this wasn't my invention. I couldn't find anything in the record that showed the temperatures. But his statement was not about the entire invention. His statement was about the specific point of whether... He stated his method was the first method to serve free-flowing dairy product for direct consumption. That is the specific part of the statement that is absolutely false. And he feels like he has not intentionally misled anyone because that wasn't his invention. His invention deals with specific temperatures at specific points, all of which are necessary to achieve his product. Does the festival record show at any point those specific temperatures? The festival market record does not, however... Then why isn't he entirely within his rights to say I didn't intentionally mislead you? That maybe the jury finds that it was close enough for obviousness. But he said it wasn't my invention. Where's the intent that you said is so clear and convincing and persuasive? Because his statement that we claim is false did not mention temperature ranges. It did not mention storage of the product. It did not mention serving at a temperature range. It's one specific point because that is what was missing from the prior art according to their theory on patentability. But you're understanding the point that if you're going to build a case for intentionally deceiving and he's saying in the first place that wasn't my invention, in the second place it was cumulative, in the third place I was experimenting, he has three separate reasons for feeling like I didn't really need to disclose that. None of which I've seen convincingly rebutted. And even if we have to get into rebuttal, do we have an intent case? And if you don't have the intent case, how do you get to Walker Process, inequitable conduct, or anything else? In the words of the district court, and the way this case should be properly analyzed in our view, is that the entire prosecution process had come down to that single point. That is what everyone was focusing on at the time. Whether the prior art included serving free-flowing beads for consumption. Warren Shickley made the patentability argument that it did not. And he failed to disclose the festival market sales, which under this court's jurisprudence, intent is established when you fail to disclose a reference and then make an argument for patentability that could not have been made had the disclosures been made. If he was experimenting, was he entitled to withhold that disclosure? A, the jury found that it was not experimentation. And B, there is no evidence in the record that they made a good faith determination at the time that that's the reason they did not disclose. There's absolutely no record evidence of that. Turning to the issue of... Let me ask you a question regarding the fees. If we reverse on the Clayton Act fees, is the 285 fees still extant because they were not appealed? Are they still before the district court? Your Honor, our position on that would be that our attorney fee award would stand because that has an independent basis for standing and it was not appealed. And the only way that they could not pay that is under Rule 60, reversing the judgment. And even if you reverse the judgment on this, we don't believe that that would affect it. But in any event, the 285 fees would then be non-duplicative. And if there was a reason that the Walker process, or if the Walker process was reversed and the basis for the 285 fees were still here, then we believe this court could have warned under 285. All right. Thank you. Thank you. Mr. Sigurdsson? If it's the court, I will address claim conscription and the defendant claims. Dippin-Dotts asked me to reverse the district court's finding of summary judgment of non-infringement based on improper claim construction with three terms, free-flowing, beads, and dripping. Free-flowing was not a basis for the finding of non-infringement. Beads and dripping were. Their basis for attacking beads and dripping is that not the construction of those terms, but that the district court excluded allegedly additional elements, streaming or irregularly shaped particles. DEI is complaining claim construction with factually analysis. Comprising cannot change the meaning of a term in a claim or an element of the claim. The district court explained the facts and explained the difference between streaming, which does not fall in drops, but may subsequently produce some drops, and falling in drops. DDI has not challenged the factual basis for the finding. Therefore, the finding of summary judgment of non-infringement should be affirmed. In regard to the dependent claims, the final judgment stated that all claims of the 156 patent were invalid. The dependent claims have been rejected by the examiner. The rejection has been upheld by the Board of Appeals. The jury had the file wrapper and the testimony of Edward Fiorito, the patent law expert. The patent issued solely based on the Declaration of Commercial Success. And as you heard, that nexus of commercial success was destroyed by the quest of market sales. Therefore, with claim one being invalid, the dependent claims are also invalid. All right. Thank you very much. Mr. Warren. Thank you. Judge Rader, to your point on is there any evidence of the temperature range, the defendant's expert conceded that he has no evidence whatsoever of the servant's step. In fact, he has no evidence anything but of the first three steps. That's in the appendix of 1057. Now, as far as providing something that's missing in the prior art, by definition, all the elements that were in the prior art were found in the claim. That's what the examiner did. That's what the board did. So there's no other prior art that's not cumulative, that's somewhere out there in the festival market or anything else. The free-flowing beads element was found by the examiner. That's why he rejected this under Section 103. Now, as far as expert testimony and the antitrust claim, there was expert testimony, but there was absolutely no expert testimony on the cyrogenic, cryogenic limitation that the court found. And under any standard, you need to have expert testimony to support that definition. As far as damages, the case law cited by the district court that nominal damages is adequate for a fining of attorney's fees, that's all fine and good, but none of the cases cited so far have awarded attorney's fees in light of a no damages award. In the cases they've talked about, there's either a settlement or a set-off or a nominal damage. This is a no damage. And the Fifth Circuit requires both the fact of damage and some amount or some indication of the amount of damages. That's the Bell Atlantic case we cite in our papers. As far as claim construction and dependence of position, you only have to take a look at a couple of elements. Well, that's fine for infringement, but we'll need all of the elements for invalidity. And again, invalidity sort of went out the window after settlement judgment was over. Thank you. Thank you. The case is submitted.